**JOHN P. BYRNE, SBN 134412**
**The ByrneLaw Office.**
24011 Ventura Blvd., Ste. 201
Calabasas, CA  91302
(818) 593-5520
John.Byrne@byrnelawcorp.com

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVA ORTHO-MED, INC., a California corporation, | ) ) ) Case No. 2:15-CV-7422 RGK (AFMx) |
| Plaintiff, | ) ) |
| vs. | ) ) **ANSWER OF DEFENDANT** |
| ARYA FARINPOUR, an individual, et. al., | ) **ARYA FARINPOUR AND** ) **FIRST AMENDED** ) **COUNTERCLAIM FOR** ) **BREACH OF CONTRACT** |
| Defendant. | ) ) |
| ARYA FARINPOUR, an individual, | ) ) |
| Counter-claimant, | ) ) |
| vs. | ) ) |
| NOVA ORTHO-MED, INC., a California corporation, | ) ) ) |
| Cross-defendant | ) ) ) ) ) |

Defendant Arya Farinpour answers and counterclaims as follows:

## **JURISDICTION**

1.  Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 1, and on that basis denies those allegations.

2. Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 1, and on that basis denies those allegations.

3.  Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 3, and on that basis denies those allegations.

## **ANSWER TO THE FIRST CLAIM FOR RELIEF**

4.  Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 3, and on that basis denies those allegations.

5.  Defendant denies all allegations other than the address of its residence.

6.  Defendant admits venue is proper.

7.  Defendant denies such allegations.

8.  Defendant denies such allegations.

9.  Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in paragraph 3, and on that basis denies those allegations.

10. Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in this paragraph, and on that basis denies those allegations.

11. Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in this paragraph, and on that basis denies those allegations.

12. Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in this paragraph, and on that basis denies those allegations.

13.  Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in this paragraph, and on that basis denies those allegations.

14. Defendant admits such allegations.

15.  Defendant denies such allegations.

16.  Defendant denies such allegations.

17.  Defendant denies such allegations.

18.  Defendant denies such allegations.

19.  Defendant denies such allegations.

20.  Defendant denies such allegations.

21.  Defendant denies such allegations.

22.  Defendant denies such allegations.

23.  Defendant denies such allegations.

24.  Defendant denies such allegations.

25.  Defendant denies such allegations.

26.  Defendant denies such allegations.

27.  Defendant denies such allegations.

28. Defendant denies such allegations.

29.  Defendant denies such allegations.

30.  Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in this paragraph, and on that basis denies those allegations.

31. Defendant denies such allegations.

32.  Defendant denies such allegations.

33.  Defendant denies such allegations.

34.  Defendant denies such allegations.

35.  Defendant lacks sufficient information to form a belief as to the truth of the allegations set forth in this paragraph, and on that basis denies those allegations.

36.  Defendant denies such allegations.

37.  Defendant denies such allegations.

38.  Defendant denies such allegations.

39.  Defendant denies such allegations.

40.  Defendant denies such allegations.

41.  Defendant denies such allegations.

42.  Defendant denies such allegations.

43.  Defendant denies such allegations.

44.  Defendant denies such allegations.

45.  Defendant denies such allegations.

46.  Defendant denies such allegations.

47.  Defendant denies such allegations.

48.  Defendant denies such allegations.

49.  Defendant denies such allegations.

50.  Defendant denies such allegations.

51.  Defendant denies such allegations.

52.  Defendant denies such allegations.

53.  Defendant denies such allegations.

54.  Defendant denies such allegations.

55.  Defendant denies such allegations.

56.  Defendant denies such allegations.

57.  Defendant denies such allegations.

58.  Defendant denies such allegations.

59.  Defendant denies such allegations.

60.  Defendant denies such allegations.

61.  Defendant denies such allegations.

62.  Defendant denies such allegations.

63.  Defendant denies such allegations.

64.  Defendant denies such allegations.

65.  Defendant denies such allegations.

66.  Defendant denies such allegations.

67.  Defendant denies such allegations.


## **FIRST AFFIRMATIVE DEFENSE**

68.  Plaintiff fails to state facts sufficient to state a claim for relief.

///

///

## SECOND AFFIRMATIVE DEFENSE

(Statutes of Limitations)

69.  Plaintiff is barred from asserting some or all of the alleged claims for relief under all applicable statutes of limitations.

## THIRD AFFIRMATIVE DEFENSE

(Laches)

70.  Plaintiff is barred from asserting its alleged claims for relief based on its unreasonable delay in asserting them.  Defendant relied to his detriment on Plaintiff's failure to assert its alleged rights and, then on Plaintiff's promises to negotiate settlement of the dispute, then on Plaintiff's promises to Defendant that an offer to settle was actually forthcoming; therefore, Plaintiff should be barred from raising some or all of the allegations contained in the Complaint.

## FOURTH AFFIRMATIVE DEFENSE

(Estoppel)

71.  Plaintiff is estopped by its negligence and intentional acts to assert the alleged claim for relief in the Complaint.  Among other things, at all times, Defendant was acting as Plaintiff's principal in doing the acts alleged in the Complaint and Defendant's registration of the Domain was done with the knowledge, consent and explicit request of Plaintiff.  After,

Plaintiff wrongfully breached the parties' contract, Defendant maintained the domain for Plaintiff's benefit while Plaintiff promised to present Defendant with an offer to settle Defendant's bill for his services.

72.  At all times relevant to the alleged cybersquatting, Defendant had invoices that were due, owing and unpaid.  Plaintiff agreed by contract, and is so estopped, from claiming any duty was owed by Defendant at a time when Defendant's invoices were unpaid.

## FIFTH AFFIRMATIVE DEFENSE

(Waiver)

73.  Plaintiff has waived, by its inaction, negligence and intentional acts, the alleged claim for relief alleged in the Complaint. Among other things, at all times, Defendant was acting as Plaintiff's principal in doing the acts alleged in the Complaint and Defendant's registration of the Domain was done with the knowledge, consent and explicit request of Plaintiff.  After, Plaintiff wrongfully breached the parties' contract, Defendant maintained the domain for Plaintiff's benefit while Plaintiff promised to present Defendant with an offer to settle Defendant's bill for his services.

///

///

## SIXTH AFFIRMATIVE DEFENSE

### (Privilege and Justification)

74.  Defendant did not register, use or traffic in the domain name with a bad faith intent to profit. In fact, the domain name has no commercial benefit to Defendant at all, and therefore it is not making or seeking to make any money. Among other things, at all times, Defendant was acting as Plaintiff's principal in doing the acts alleged in the Complaint and Defendant's registration of the Domain was done with the knowledge, consent and explicit request of Plaintiff.

## SEVENTH AFFIRMATIVE DEFENSE

### (Contractual Limitation on Damages)

75.  The parties agreed in a written agreement that Plaintiff's damages were limited.

## EIGHT AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

76.  Plaintiff has failed to mitigate its alleged damages, if any.

///

///

///

///

## NINETH AFFIRMATIVE DEFENSE

### (Set Off)

77.  Some or all of the alleged damages suffered by Plaintiff, if such damages exist, are completely set off by the damages suffered by Defendant as alleged in Defendant's counterclaim.

## TENTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

78.  Plaintiff knowingly and voluntarily assumed the risk of suffering its alleged damages. Among other things, at all times, Defendant was acting as Plaintiff's principal in doing the acts alleged in the Complaint and Defendant's registration of the Domain was done with the knowledge, consent and explicit request of Plaintiff.  After, Plaintiff wrongfully breached the parties' contract, Defendant maintained the domain for Plaintiff's benefit while Plaintiff promised to present Defendant with an offer to settle Defendant's bill for his services.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

79.  Plaintiff are barred from recovering their alleged damages, if such damages exist, by its unclean hands.  The complaint is a bad faith negotiating tactic that came at a time when Plaintiff was promising to settle

and pay Defendant's contract for services.  These claims are an attempt to bully Defendant into settling on unfavorable terms.

## TWELTH AFFIRMATIVE DEFENSE

### (Merger)

80.  The respective rights and obligations of the parties are manifested in a written contract.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Master and Servant)

81.    Defendant's acts alleged in the Complaint were done as an agent of Plaintiff in the course and scope of his agency for hire.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Contributory Negligence of Principal)

82.  Plaintiff hired Defendant as its agent and directed him to do the acts alleged in the complaint.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Ratification and Affirmance)

83.  After knowing that Defendant had registered the domains, Plaintiff ratified Defendant's acts and affirmed them as entirely proper.

///

///

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Rights in Intellectual Property)

84.  Plaintiff assigned to Defendant by written contract in the alleged intellectual property rights.

## COUNTERCLAIM

85.  The Court has jurisdiction over this Counterclaim under 28 U.S.C. §1367.

86.  Venue is proper under 28 U.S.C. § 1391.

## BREACH OF CONTRACT

87.  On or about July 1, 2011, Defendant Arya Farinpour (hereafter, "Farinpour") and Plaintiff Nova-Ortho Med, Inc. (hereafter "Nova") entered a written contract (the "Services and Materials Contract").

88.  A true and correct copy of the written agreement is attached hereto marked as Exhibit "1" and is incorporated herein as if set forth in full.

89.  The Services and Materials Contract was and is supported by valuable consideration.

90.  As more specifically set forth in the Services and Materials Contract, Nova hired Farinpour to provide technical support and materials at the request and under the direction of Nova.

91.  Farinpour regularly provided his services under the Service's and Materials Contract for over three years, during which time he acted as a *de facto* employee of Nova.

92.  At the request of Nova, and acting on behalf of Nova, Farinpour also entered year to year contracts with Key Information Systems for the purpose of hosting Nova's website server and firewall wherein Nova's website resided and Nova planned to have their new/future website reside.

93.  With the knowledge and consent of Nova, Farinpour entered the Key Information Systems contracts in his own name but for the sole benefit of Nova.

94.  In November, 2014, Nova requested Farinpour to renew the Key Information Systems contract for another year.  Farinpour did so.

95.  As of December, 2014, Farinpour had provided approximately $50,000 worth of services and materials.

96.  In breach of the Services and Materials Contract, Nova has failed and refused since December 2014 to pay Farinpour.

97.  As a result, Farinpour has been harmed in an amount exceeding $50,000.

98.  The Services and Materials Contract provides Farinpour with the right to recover his attorney's fees and costs.

WHEREFORE, Farinpour prays for judgment as follows:

1.     That Plaintiff take nothing by reason of its Complaint and that judgment be entered in favor of Defendant;

2.     That Defendant recover costs of suit;

3.     That Defendant recover attorneys' fees incurred by him in defending this action; and

4.     That Defendant recover such further and other relief as the Court may deem just and proper.

5.     On the Counterclaim, for a sum exceeding $50,000, for attorneys' fees, costs of suit and for such further and other relief as the Court may deem just and proper.


Dated:  January 19, 2016                    JOHN P. BYRNE
                                            The ByrneLaw Office.


                                              /s/ John P. Byrne
                                            John P. Byrne
                                            Attorneys for Arya Farinpour

EXHIBIT "1"

July 1, 2011

**Nova Ortho-Med, Inc.**
1470 Beachey Pl.
Carson, California 90746
Phone 800.557.6682
Fax 310.352.3610
www.novaorthomed.com

Dear Sue and Annette,

Thank you for the opportunity to present this letter proposal. It is my understanding that Nova Ortho-Med, Inc. requires assistance in supporting their current Information Technology Systems, applications and infrastructure components.

**My Understanding of Your Requirements**

My understanding is that Nova Ortho-Med, Inc. would like to outsource its service and support of the following items;

- ➤ Servers to be maintained;

    - o  Phone/Voice-mail server
    - o  FTP/NAS Server
    - o  Exchange Server
    - o  Citrix Server
    - o  Production (AD) Server – Print, File, DHCP, DNS, Active Directory Server
    - o  MAS200 Accounting Server

- ➤ Maintain all production/aforementioned servers at optimum performance. This includes weekly defrag, clean disk, checking and cleaning of event viewer, and checking backup jobs that have run.
- ➤ Maintain all infrastructure devices with periodic updates to "non-application" based software including firewall, switchgear, and T1 communication equipment.
- ➤ Maintain the aforementioned servers at optimum performance. The same periodic updates that apply to the main server should be included for all other servers. Any new software or hardware installations required for these servers will not be Included in this service and support.
- ➤ Provide service and support for 31 workstations including the Los Angeles and Chicago locations
- ➤ Provide routine maintenance of workstations including trouble-shooting PC's, terminal, or scanner problems. Repair or replacement action will be determined prior to expending any time to resolve the problem.
- ➤ Provide 24/7 remote network monitoring to insure continuous uptime as well as the ability to net support/logmein into remote locations to resolve and /or troubleshoot computer problems.

Nova Ortho-Med, Inc. would like "routine monthly system support" of the aforementioned items and would like a monthly service and support agreement for a one year duration with a fixed monthly dollar amount. As such, the following outlines our approach to fulfill Nova Ortho-Med, Inc. requirements;

**Approach**

**Monthly Service and Support**

1.  **Infrastructure components to be supported**

    (i)    Servers (at Carson location)
    - Phone Server
    - FTP/NAS Server
    - Exchange Server
    - Citrix Server
    - Active Directory, File, Print, DHCP, DNS Server, E-mail server, Blackberry server
    - MAS200 Accounting Server

    (ii)   Workstations/Laptop
    - Carson, CA. – 31 workstations
    - Chicago, IL – 5 workstations
    - Scanners

    (iii)  Printers
    - Carson, CA – 3 printers
    - Chicago, IL – 2 printers

    (iv)   Network  (LAN \ WAN) and related components
    - 1 –T1 Internet Router
    - 2 –WAN Firewalls
    - 3 - Switches & Hubs
    - 16 – Wireless Access points

    (v)    E-Mail accounts setup, maintenance, and support

    (vi)   ISP/Internet connection, maintenance, and support

    (vii)  Server/s hard drive backup and related device/s

2.  **Monthly Server and Infrastructure support tasks**

    (i)     Server Performance and Optimization Testing & Tuning
    (ii)    Network Load and Optimization Testing & Tuning
    (iii)   Review of router logs
    (iv)    Review of System, Security, and Application logs
    (v)     Clean unused files off server and workstation
    (vi)    Update Server with patches/Microsoft updates
    (vii)   Defragmenting of all Server Hard Drive Partitions
    (viii)  Review of Daily/Weekly Backup Logs
    (ix)    Review of File System
    (x)     Review of UPS Logs
    (xi)    Upload and scan of Spyware software
    (xii)   Upload and scan of AntiVirus software
    (xiii)  24/7 monitoring of primary infrastructure components

3.  **Monthly application and database support tasks**

    (i)     Updates to Office 2007 and Windows 7 (if available)

4.  **Monthly Workstation support tasks (31 computers)**

    (i)     Performance and Optimization Testing & Tuning of all workstation/s
    (ii)    Clean unused files off workstation/s
    (iii)   Defragmenting of all workstation/s hard drive partitions
    (iv)    Review of File System on all workstation/s
    (v)     Upload and scan of Spyware software on all workstation/s
    (vi)    Upload and scan of AntiVirus software on all workstation/s

(vii)     Provide support for workstation issues as needed
(viii)    Resolve/support connection, printer, and/or login issues as needed

**Cost**

Arya Farinpour will provide the aforementioned support tasks and oversight which are estimated to take 32 hours per month. Tasks and/or time spent may include on-site or off-site time and will be billed at a flat rate of $4000 per month for a period of one year starting 7/1/2011 with a renewal date of 7/1/2016. A 4% increase in monthly support fee and hourly rate will apply annually. Tim Girard will act as a backup if Arya Farinpour is not available. Most support tasks will be conducted off-site unless an on-site visit is required to resolve an outstanding issue.

The fees for services rendered will be billed on the first of each month and are due **no later than the 15th** of that given month.

Additional technical support services and/or project work not listed above is available at a rate of $150 per hour from 9:00am until 6:00pm, Monday thru Friday, and $200 per hour for off hour support, as needed with pre-approval from Nova Ortho-Med, Inc. management.

**Terms and Conditions**

This agreement will be valid for the specific services contemplated herein, until terminated by Arya Farinpour or Nova Ortho-Med, Inc. Either party can terminate this agreement prior to the expiration date by issuing a notice of termination to the other party. Thirty days after the issuance and receipt of that termination notice, the services being rendered will be terminated. However, all obligations of each party under this agreement will still be in effect.

Nova Ortho-Med, Inc. understands that Arya Farinpour cannot and will not warrant hardware, software, or services provided by manufacturers, or vendors of their products and/or services, as I have no control over their activities. Arya Farinpour's liability under the terms of this agreement, if any, shall not exceed the amount of the fees collected for his services.

Additionally, Nova Ortho-Med, Inc. understands that many of the support tasks must be conducted after hours remotely and may not require on-site visits. It is also understood that Arya Farinpour and Tim Girard may use the designated Nova Ortho-Med, Inc. data center and IT offices for business not related to Nova Ortho-Med, Inc. support tasks, as long as this work does not interfere and/or disrupt Nova Ortho-Med, Inc. normal operations.

If the foregoing and attached master terms and conditions are in accordance with your understanding, please sign and return to us one copy of this letter to indicate your acceptance of the terms set forth herein, whereupon this letter and your acceptance shall constitute a binding agreement between the Nova Ortho-Med, Inc. and Arya Farinpour.

Very truly yours,                          Accepted as of: July 1 2011

                                           Nova Ortho-Med, Inc.


Arya Farinpour                             By:  Sue Chen      Title: President, CEO

## MASTER TERMS AND CONDITIONS

1. **Professional Services**

   Arya Farinpour will provide the professional services specified in the document (the "Agreement") to which these Terms and Conditions are attached and made a part of (the "Services"), upon the terms and conditions of this Agreement. Scheduled Service dates will be agreed upon mutually, subject to availability of Arya Farinpour and/or subcontractors. Under no circumstances will the Services include or provide for Year 2000 Compliance (as defined below). These Terms and Conditions, along with the Document and all appendices thereto, are collectively this "Agreement". Moreover, it is understood that Arya Farinpour is an independent contractor with respect to Nova Ortho-Med, Inc. and not an employee of Nova Ortho-Med, Inc. As such Nova Ortho-Med, Inc. will not provide fringe benefits, including heath insurance benefits, paid vacation, or any other employee benefits, for the benefit of Arya Farinpour.

2. **Expenses**

   For any on-site Services requested by Nova Ortho-Med, Inc., Nova Ortho-Med, Inc. will reimburse Arya Farinpour for actual, reasonable travel and out-of-pocket expenses incurred directly associated with the Services.

3. **Invoicing and Payment**

   Fees for the Services will be due and payable when invoiced or under the payment terms specified in the attached Agreement, and will be deemed overdue if they remain unpaid thirty-one (31) days after they become due and payable. If Nova Ortho-Med, Inc. procedures require that an invoice be submitted against a purchase order before payment can be made, Nova Ortho-Med, Inc. will be responsible for issuing such purchase order thirty (30) days before the payment due date. If Nova Ortho-Med, Inc. account is past due and Arya Farinpour has notified Nova Ortho-Med, Inc. verbally or in writing of the past due balance, Arya Farinpour may, without advance notice, immediately cease providing any and all further Services without any liability for interruption of pending work or breach of this Agreement. If Nova Ortho-Med, Inc. account, after default, is referred to an attorney and/or collection agency for collection, Nova Ortho-Med, Inc. will pay all of Arya Farinpour's expenses incurred in such collection efforts including, without limitation, court costs and reasonable attorneys' fees.

4. **Limitations on Warranty**

   **ARYA FARINPOUR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE SERVICES. ARYA FARINPOUR EXPRESSLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE.**

   **Arya Farinpour expressly disclaims any warranty whatsoever that the Services will include or provide for accurately processing date-related data (including, without limitation, calculating, comparing and/or sequencing) from, into and between the twentieth and twenty-first centuries, including leap year calculations ("Year 2000 Compliance"), and Nova Ortho-Med, Inc. expressly assumes all risks associated with such date-related failures.**

5. **Limitation of Liability**

   **NOVA ORTHO-MED, INC. 'S EXCLUSIVE REMEDY, AND ARYA FARINPOUR'S SOLE LIABILITY TO NOVA ORTHO-MED, INC. FOR ANY CAUSE WHATSOEVER WILL BE LIMITED TO, AT ARYA FARINPOUR'S ELECTION, EITHER RE-PERFORMANCE OF THE SERVICES, OR THE FEES PAID TO ARYA FARINPOUR BY NOVA ORTHO-MED, INC. UNDER THIS AGREEMENT. THE FOREGOING LIMITATION WILL APPLY REGARDLESS OF THE FORM OF ACTION, WHETHER CONTRACT OR TORT, INCLUDING WITHOUT LIMITATION, NEGLIGENCE. IN NO EVENT WILL ARYA FARINPOUR BE LIABLE FOR ANY LOSS OF PROFIT, REVENUE, DATA, USE, OR OTHER COMMERCIAL INJURY, OR ANY SPECIAL, INCIDENTAL, INDIRECT OR CONSEQUENTIAL DAMAGES, SUFFERED BY NOVA ORTHO-MED, INC. OR ANY THIRD PARTY, WHETHER OR NOT ARYA FARINPOUR HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH LOSS, INJURY, DAMAGES OR THIRD PARTY CLAIM, UNDER ANY CAUSE OF ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT. ARYA FARINPOUR DISCLAIMS ANY AND ALL LIABILITY FOR DIRECT, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR ANY OTHER DAMAGES RELATING TO YEAR 2000 COMPLIANCE.**

6. **Recruiting of Personnel**
During the term of this Agreement and for a period of twelve (12) months thereafter, it is understood that neither party will solicit, entice, hire, employ and/or subcontractors, or seek to employ any employee or partner of the other party without express written consent by such other party. Any violation of this Paragraph 7 will be considered a material breach of this Agreement. In the event of Nova Ortho-Med, Inc. violation of this Paragraph 7, in addition to any other remedies Arya Farinpour may be entitled to, Nova Ortho-Med, Inc. will pay Arya Farinpour, immediately upon such employee's, partner's, or sub-contractors departure from Arya Farinpour, an amount equal to Eighty Thousand (80,000) Dollars.

7. **Assignment**
Nova Ortho-Med, Inc. will not assign this Agreement, in whole or in part, without the prior written consent of Arya Farinpour, which written consent will not be unreasonably withheld. Arya Farinpour will have the right, without the prior written consent of Nova Ortho-Med, Inc., to assign all or any of its rights, title and interests in and to this Agreement to any of its affiliates.

8. **Enforceability**
If any provision, or any part of any provision, of this Agreement will be held void, voidable, invalid, or inoperative, no other provision of this Agreement will be affected as a result thereof and accordingly, the remaining provisions of this Agreement will remain in full force and effect as though such void, voidable, invalid or inoperative provision or part thereof had not been contained herein. The parties acknowledge and agree that this Agreement allocates risk between them as authorized by any applicable law and that the amount of the fees charged for the Services reflects this allocation of risk and other limitations of liability contained in this Agreement. If any remedy hereunder is determined to have failed of its essential purpose, all limitations of liability and exclusion of damages set forth in this Agreement will remain in full force and effect.

9. **Use of Name**
Nova Ortho-Med, Inc. hereby grants to Arya Farinpour the limited, royalty-free, non-exclusive and non-transferable right and license to list the name of Nova Ortho-Med, Inc. in the marketing materials of Arya Farinpour for the sole purpose of informing the public that Nova Ortho-Med, Inc. is a client of Arya Farinpour. This right and license shall be limited in duration to the term of this Agreement and shall not enable Arya Farinpour to describe the specific purpose for which Arya Farinpour has been retained by Nova Ortho-Med, Inc. without the prior written consent of Nova Ortho-Med, Inc.

10. **Intellectual Property**
It is expressly understood and agreed that all works, inventions, programs, data, source code and other materials created, developed or performed by Arya Farinpour in the course of its performance of this Agreement (the "Work Product") is, will be and will remain the exclusive property of Arya Farinpour or its affiliates, and Arya Farinpour or its affiliates will have all rights, title and interest therein, including without limitation, copyrights, patents, trade secrets and any other proprietary rights. Nova Ortho-Med, Inc. will have a perpetual royalty-free, non-exclusive and non-transferable right and license to use the Work Product solely for Nova Ortho-Med, Inc. and any affiliates and/or subsidiaries of Nova Ortho-Med, Inc. strictly for internal purposes.

11. **Independent Contractor**
Arya Farinpour and Nova Ortho-Med, Inc. acknowledge that the relationship between the parties to this Agreement is exclusively that of an independent contractor and that Arya Farinpour's obligations to Nova Ortho-Med, Inc. are exclusively contractual in nature. This Agreement does not create an agency, employment, partnership joint venture, trust or other fiduciary relationship between the parties. Neither party shall have the right to bind the other to any third person or otherwise to act in any way as a representative or agent of the other.

12. **Entire Agreement**
This Agreement sets forth the entire agreement between the parties with respect to the subject matter herein, superseding all prior agreements, negotiations or understandings, whether oral or written, with respect to such subject matter. To the extent that any of the terms and conditions of the Document or any appendices

thereof conflict with these Terms and Conditions, these Terms and Conditions will control.  This Agreement may not be changed, modified or waived in whole or part except by an instrument in writing signed by both parties. Unless otherwise defined in the Document, all defined terms will have the definitions set forth in these Terms and Conditions.